1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
10
11 **TONYA T. COOLEY,**                    )      NO. CV 10-03432-MAN
                                          )
12                    **Plaintiff,**       )
                                          )      MEMORANDUM OPINION
13              **v.**                     )
                                          )      AND ORDER
14 **MICHAEL J. ASTRUE,**                  )
   **Commissioner of Social Security,**   )
15                                         )
                    **Defendant.**         )
16 _____)
17

     Plaintiff filed a Complaint on May 12, 2010, seeking review of the
denial by the Social Security Commissioner (the "Commissioner") of
plaintiff's application for a period of disability, disability insurance
benefits ("DIB"), and social security income ("SSI").  On June 21, 2010,
the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before
the undersigned United States Magistrate Judge.  The parties filed a
Joint Stipulation on April 25, 2011, in which:  plaintiff seeks an order
reversing the Commissioner's decision and remanding this case for the
payment of benefits or, alternatively, for further administrative
proceedings; and defendant requests that the Commissioner's decision be
affirmed or, alternatively, remanded for further administrative

proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff, who was born on May 20, 1960, filed an application for a period of disability, DIB, and SSI.[1]  (Administrative Record ("A.R.") 25.)  Plaintiff claims to have been disabled since January 24, 2005, due to a neck injury, carpal tunnel syndrome in both wrists, disc deterioration and spurs, and depression.  (A.R. 28, 43, 123, 176.) Plaintiff has past relevant work experience as a restaurant manager and waitress.  (A.R. 30.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 25, 43-47, 54-58), plaintiff requested a hearing (A.R. 65-66).  On November 19, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Helen Hesse (the "ALJ").  (A.R. 663-86.)  Medical expert Joseph Jensen (an orthopedic surgeon) and vocational expert Stephen Berry also testified.  (*Id.*)  On April 22, 2009, the ALJ denied plaintiff's claim (A.R. 25-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 6-9).  That decision is now at issue in this action.

///

///

----

[1]    On the alleged disability onset date, plaintiff was 44 years old, which is defined as a "younger individual."  (A.R. 30 (*citing* 20 C.F.R. §§ 404.1563, 416.963).)

2

The ALJ found that plaintiff has not engaged in substantial gainful activity since January 24, 2005, the alleged onset date of her claimed disability. (A.R. 27.) The ALJ further found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (*Id.*) The ALJ determined that plaintiff has the following severe impairments: "multi level cervical degenerative disc disease C5-6 and C6-7 with bulging, neural foraminal narrowing and left sided radiculopathy, left shoulder impingement and tendonitis, and bilateral carpal tunnel syndrome with status post carpal tunnel release with improvement and left median nerve slowing." (A.R. 27.) The ALJ also determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926). (A.R. 28.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) which permits lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for 6 hours out of an 8 hour day, and standing/walking for 6 hours out of an eight hour day with a change of position at normal workday breaks; no walking over uneven surfaces; no climbing ladders/scaffolds or crawling; occasional climbing stairs, bending, balancing, stooping, kneeling, and crouching;

frequent handling/gross manipulation and frequent fine manipulation/manual dexterity/fingering with the left hand; no reaching at or above shoulder level with the bilateral upper extremities; occasional range of motion of the neck from side to side or up and down; and no working at unprotected heights or being around dangerous or fast moving machinery.

(A.R. 28.)

The ALJ concluded that plaintiff was unable to perform her past relevant work. (A.R. 30.) However, having considered plaintiff's age, education, work experience, RFC, as well as the testimony of the vocational expert, the ALJ found that jobs exist in the national economy that plaintiff could perform, including those of information clerk, cashier, and sales attendant. (A.R. 31.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from January 24, 2005, through the date of her decision. (A.R. 32.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." <u>Connett v.</u>

4

Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

///

**DISCUSSION**

Plaintiff makes the following claims: (1) the ALJ improperly evaluated plaintiff's excess pain testimony; and (2) the ALJ erred at step 5 by improperly relying on the vocational expert's opinion that certain job positions would accommodate neck motion limitations when the Dictionary of Occupational Titles (the "DOT") was silent on the matter. (Joint Stipulation ("Joint Stip.") at 1-32.)

## II. The ALJ Failed To Give Clear And Convincing Reasons For Finding Plaintiff's Excess Pain Testimony To Be Not Credible.

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of his subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning

the nature, severity, and effect of the symptoms of which the claimant complains. *See* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ found that plaintiff's "medically determinable impairments . . . could be expected to produce the alleged symptoms." (A.R. 29.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

In finding plaintiff to be not entirely credible, the ALJ stated that:

> [i]n terms of treatment, . . . [plaintiff] confirmed that she had not undergone neck surgery, stating that she had a fear of surgeries, but on the other hand, reported that a left shoulder surgery was pending for December 2008. She stated that the results following her right carpal tunnel surgery were okay, although she still had some numbness, but that her left wrist was worse. The record references that she was reportedly comfortable with just utilizing wrist splints. [Plaintiff] has stated that she is unable to lift, push/pull, grasp, turn her neck or use her hands, although the objective evidence does not show that she is totally precluded from performing these activities.

(A.R. 29.) Thus, while not completely clear, it appears that the ALJ found plaintiff to be not credible because: (1) plaintiff's reason for

declining neck surgery -- *to wit*, her fear of surgeries -- is inconsistent with her pending and prior surgeries; and (2) the objective evidence does not show that plaintiff is totally precluded from lifting, pushing/pulling, grasping, turning her neck, or using her hands, as alleged.

The ALJ's first ground for finding plaintiff to be not credible is neither clear nor convincing. At the November 19, 2008 administrative hearing, plaintiff testified that she had declined neck surgery in the past, because she had a "fear of surgeries." (A.R. 668.) Notwithstanding her fear, plaintiff testified that, because of the pain she experiences, she has "no choice" but to have neck surgery. (A.R. 675.) While not yet scheduled, plaintiff indicated that she would have neck surgery some time after her upcoming left shoulder surgery. (*Id.*)

Contrary to the ALJ's finding, the Court does not find plaintiff's prior refusal to undergo neck surgery due to her "fear of surgeries" to be inconsistent with plaintiff's prior and pending surgeries. First, unlike plaintiff's other surgeries, there are controverted medical opinions regarding whether plaintiff should undergo surgery on her neck.[2]

---

[2] A.R 263 (05/13/05 -- Kevin Shamlou, M.D. recommends that plaintiff "not . . . have the surgery unless she cannot bear the symptoms"); A.R. 531 (07/25/07 -- Gregory Carlson, M.D. (an orthopedic surgeon) "did not feel that [plaintiff] is a surgical candidate"); A.R. 604 (08/28/07 -- John H. Freeman, M.D. noted that "Dr. Coufal . . . recommended surgery in the past[, but Dr. Freeman is] recommending a reevaluation by Dr. Coufal at this point"; two Agreed Medical Experts ("AME"), not identified, recommended surgery; and one AME, not identified, recommended against surgery); A.R. 583 (02/04/08 -- Daniel A. Levine, M.D. recommends, in a neurological consultation, that plaintiff see Srinath Samudrala, M.D. for a "definitive neurological opinion" regarding surgery); A.R. 645 (07/01/08 -- Dr. Freeman recommends surgery; "feels [plaintiff] needs surgery on her neck first

8

Second, there are substantial risks involved in plaintiff's neck surgery, including, *inter alia*, a 20-30% risk of nonunion of plaintiff's bones because of plaintiff's history of smoking. (A.R. 662.) Significantly, it was noted that, if plaintiff develops nonunion, she "might require a posterior stabilization [procedure]" -- *i.e.*, another surgery. (*Id.*) Third, plaintiff's prior surgeries have not been entirely successful. Following her carpal tunnel release surgeries, plaintiff reported numbness in her right wrist and a worsening in her left wrist. (A.R. 29, 596, 598.) In fact, medical examiner Dr. Mark Mandel, M.D. noted that plaintiff's grip strength readings have not improved since surgery. (A.R. 545.) Lastly, it is unclear how plaintiff's pending left shoulder surgery is inconsistent with plaintiff's prior refusal to undergo neck surgery, particularly in view of the fact that, notwithstanding her fear, plaintiff testified that she would be having neck surgery.

Accordingly, in view of the controverted opinions regarding plaintiff's neck surgery and the significant risks involved therein, the results of plaintiff's prior wrist surgeries, as well as plaintiff's testimony that she would undergo neck surgery, plaintiff's prior refusal to undergo neck surgery because of her fear of surgeries does not appear to be inconsistent with her prior and pending surgeries. Therefore, the ALJ's reasoning does not constitute a clear and convincing reason for

and then surgery on the shoulder"); A.R. 661-62 (10/07/09 -- Dr. Samudrala recommends surgery, but notes that plaintiff has a 20-30% risk of nonunion because of her history of smoking).

finding plaintiff to be not credible.[3]

The ALJ's second reason for discrediting plaintiff is also neither clear nor convincing. In his decision, the ALJ notes that plaintiff "has stated that she is unable to lift, push/pull, grasp, turn her neck or use her hands, although the objective evidence does not show that she is totally precluded from performing these activities" (A.R. 29.) As an initial matter, the ALJ fails to identify specifically what "objective evidence" undermines plaintiff's alleged limitations. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)(noting that "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints")(citation and internal citations omitted); see also Dodrill

---

[3] While recognizing that a court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely," in this case, it appears that the ALJ may have rejected plaintiff's credibility, in part, because plaintiff failed to undergo a recommended treatment -- i.e., neck surgery. Orn, 495 F.3d at 630. It is well established that the failure to follow a prescribed treatment that would ameliorate an impairment, without good reason, is a valid basis for denying benefits. 20 C.F.R. §§ 404.1530(b), 416.930(b). However, "it is improper to deny benefits on the basis of declined surgery, when surgery is only a suggested rather than a prescribed course of treatment." Aquirre v. Astrue, 2009 WL 3346741, at *5, 2009 U.S. Dist. LEXIS 129988, at *13 (C.D. Cal. 2009); see Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985)(finding that a claimant's refusal to undergo surgical treatment is not a sufficient reason to deny benefits where surgery was at most recommended or suggested but not prescribed by a physician); see also Young v. Califano, 663 F.2d 469, 472-73 (9th Cir. 1980)(unwillingness to undergo a suggested surgery does not constitute a failure to follow prescribed treatment); 20 C.F.R. §§ 404.1530(a)-(b), 416.930(a)-(b) ("In order to get benefits, you must follow treatment prescribed by your physician . . . [and i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled.")(emphasis added). As noted supra, in this case, there are differing medical opinions regarding whether plaintiff should undergo surgery on her neck. Additionally, the medical evidence does not indicate that neck surgery was ever prescribed. Accordingly, to the extent the ALJ rejected plaintiff's credibility because plaintiff failed to follow her treatment by not undergoing neck surgery, the ALJ erred.

v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)(if the ALJ does not accept a claimant's testimony he must make specific findings rejecting it). Further, the failure of the medical record to corroborate fully plaintiff's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, the ALJ's finding that the objective evidence does not support the extent of plaintiff's symptoms cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony. See Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988); Cotten v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Burch, 400 F.3d at 681.

Moreover, and significantly, the ALJ failed to address plaintiff's testimony regarding the side effects of her pain medication[4] (A.R. 675, 678) and her difficulties sitting for more than an hour and

---

[4]    An ALJ must consider the alleged side effects of a claimant's medications in the disability evaluation. See Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993)(noting that an ALJ must consider all factors, including the side effects of medications, that might have a "'significant impact on an individual's ability to work'")(citation omitted); see also Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2-*3, 1996 SSR LEXIS 4, at *7-*8 (noting that type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms should be considered in the disability evaluation); 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).    In this case, plaintiff's Adult Disability Report and testimony indicate that plaintiff's pain medication, Norco, causes her to feel drowsy/tired (A.R. 125) and lose focus (A.R. 678).    Clearly these side effects could have a significant impact on plaintiff's ability to work, and thus, the ALJ's failure to consider them constitutes error.

11

standing/walking for more than 90 minutes without experiencing pain (A.R. 676). The ALJ's failure to address *all* of plaintiff's pain and symptom testimony, much less articulate any clear and convincing reason(s) for rejecting it, constitutes error.

Accordingly, for the aforementioned reasons, the ALJ failed to give clear and convincing reasons, as required, for discrediting plaintiff's testimony.[5]

## II. **On Remand, Further Inquiry May Be Appropriate To Remedy Any Potential Conflict Between the DOT And The Vocational Expert's Testimony.**

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ's conclusion regarding plaintiff's RFC and her capacity to perform "other work" may change. Accordingly, the Court does not reach plaintiff's second claim, *to wit*, that the ALJ erred at step 5 by relying on the vocational expert's opinion that the jobs of information clerk, cashier, and sales attendant would accommodate plaintiff's neck motion limitations when the DOT was silent on the matter.

Although the Court does not reach plaintiff's second claim, the

---

[5] Moreover, while defendant proffers several reasons to explain the ALJ's credibility determination -- including, *inter alia*, plaintiff's lack of atrophy -- the Court cannot entertain these post hoc rationalizations. *See, e.g.*, Connett, 340 F.3d at 874 (stating "[w]e are constrained to review the reasons the ALJ asserts" and "[i]t was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

Court notes that many district courts have construed the Ninth Circuit's holding in <u>Massachi v. Astrue</u>, 486 F.3d 1149 (9th Cir. 2007) to mean that "where[, as in this case,] an expert opines on an issue about which the DOT is silent, a conflict exists." <u>Smith v. Astrue</u>, 2010 WL 5776060, at *11-*12, 2010 U.S. Dist. LEXIS 141443, at *32-*33 (N.D. Cal. 2010)(holding that, "because the DOT does not address sit/stand options, the potential inconsistency between the vocational expert's testimony and DOT warrant further inquiry on remand); *see* <u>Valenzuela v. Astrue</u>, 2009 WL 1537876, at *3-*4, 2009 U.S. Dist. LEXIS 46249, at *8-*9 (N.D. Cal. 2009)(finding that further inquiry upon remand was appropriate when a vocational expert's testimony that certain positions would accommodate a sit/stand option was potentially in conflict with the DOT, which was silent on the matter). Therefore, because the DOT is silent with respect to neck motion limitations -- limitations which the ALJ found plaintiff to have -- and there could be a potential inconsistency between the vocational expert's testimony and the DOT, further inquiry on remand may be appropriate.

## III. <u>Remand Is Required.</u>

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where

there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

On remand, the ALJ must correct the above-mentioned deficiencies and errors. After so doing, the ALJ may need to reassess plaintiff's RFC in which case additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

*///*
*///*
*///*
*///*
*///*
*///*
*///*
*///*
*///*
*///*
*///*

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  June 27, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

15